IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| DESERT SALLEE, o/b/o/ C.N.B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-5047-CV-SW-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS**

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for supplemental security income ("SSI") benefits for her minor son. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff filed this application for benefits on behalf of her minor son, C.N.B.. C.N.B. was born in January 2008, and the application for benefits was filed on April 21, 2009. The Record establishes that C.N.B. was born with an injury to his right brachial plexus – the network of nerves that sends signals from the spine to the shoulder, arm and hand. He was initially treated with physical therapy at Freeman Health Systems, but in December 2008 he underwent surgery at Children's Mercy Hospital. Within three weeks C.N.B. returned to therapy, where it was noted he was left-hand dominant and that he "demonstrates decreased active and functional use" of his right arm and "mild delay in his developmental fine motor skills and self care skills." Continued therapy was recommended. R. at 208-09. In January 2009, C.N.B. demonstrated increased range of motion with his right arm. R. at 281. In March 2009, Plaintiff reported "improvement in [C.N.B.'s] shoulder function postoperatively and in fact, states that she saw almost

immediate improvement in shoulder movement postoperatively." However, she was "not seeing really any changes in the hand or wrist function." The doctor noted these observations were normal given the recency of C.N.B.'s operation. R. at 275-76.

In April 2009, Plaintiff took her son to see Dr. Fredric Wheeler at Pediatric Associates of Southwest Missouri for a well-child examination. Dr. Wheeler would eventually be C.N.B.'s regular pediatrician. R. at 32. During this visit C.N.B. exhibited the ability to stoop and recover and stand alone, and his activity was "[a]ppropriate for age." He was also described as able to walk "well and quickly," although he had "some difficulty with balance." R. at 258-59. In May, Dr. Wheeler noted C.N.B. was "moving rt arm better." R. at 364.

In June, Dr. Robert Rinaldi at Children's Mercy noted C.N.B. exhibited continued improvement in his shoulder and elbow movement and increased use of his right arm. Dr. Rinaldi also indicated that further improvement was expected as C.N.B. had surgery only six months prior. R. at 272-73. In a visit to Dr. Christine Cheng at Children Mercy's orthopedic clinic, Plaintiff and her husband reported they "continued to notice improvement in his right upper extremity function." R. at 307.

In December 2009, the occupational therapist at Children's Mercy noted C.N.B. continued to exhibit a restricted range of motion in his right arm. The therapist's note states as follows:

> Decreased use of right UE [upper extremity] has led to decreased development and strength of the right arm. This influences safety as [C.N.B.] is unable to catch himself when he falls to the right. He also has difficulty reaching out and grasping toys with the right hand due to decrease[d] ability to extend elbow and decreased ability to abduct thumb to grasp toys. This will affect his ability to master self-care skills later.

R. at 394-95. However, in January 2010, the C.N.B.'s regular provider of therapy (Freeman Health System) noted C.N.B. had shown improvement over the preceding year. Testing revealed C.N.B.'s grasping ability was 0.67 standard deviations below age appropriate levels and that his visual motor integration was 0.33 standard deviations below age appropriate levels. The therapist also noted C.N.B. "demonstrates decreased active and functional use of RUE . . . . There is some improvement with right hand grasping skills. He also demonstrates a mild delay in his developmental fine

motor skills and self care skills." C.N.B. was able to feed himself with a sppon and fork, drink from a sippy cup, and remove his socks. He was "dependent with dressing primarily because he has not been given much opportunity to do for himself." R. at 377-78.

In June 2010, C.N.B.'s father told Dr. Cheng that C.N.B. was "doing well overall." It was noted that C.N.B. was not fully cooperative with therapy – partially due to his age, and partially due to his natural preference for using his left hand. Consequently, Dr. Cheng opined that while further surgery might be helpful it was best to delay such plans. R. at 398-99.

In July 2010, Dr. Wheeler completed an Individual Functional Assessment, indicating C.N.B. was markedly limited in his ability to move about and manipulate objects and less than markedly limited with regard to his health and physical well-being and in his ability to care for himself. R.at 391-92.

During the hearing C.N.B.'s mother testified[1] C.N.B. is unable to dress himself and opined that he might never be able to do so. She also expressed concern that C.N.B. would never be able to tie his shoes because he could not use his right hand. R. at 35. She also claimed that the prior surgery had not made any difference at all. R. at 36. She also described C.N.B. as falling more than most children his age. R. at 37-38.

The ALJ considered the six domains prescribed for evaluation in cases involving applications by children. He found C.N.B. was not limited in the domains of acquiring and using information, attending to and completing tasks, and interacting and relating with others. He found C.N.B. was less than markedly limited in the domains of health and well-being and caring for himself, and markedly limited in the domain of moving about and manipulating objects. In reaching these conclusions, the ALJ relied on the fact that C.N.B. is left-handed, which diminished the effect of problems with his right arm. He also relied on the reports from doctors, particularly Dr. Wheeler's July 2010 assessment. In fact, the ALJ's findings correspond to Dr. Wheeler's opinion. With regard to Plaintiff's testimony, the ALJ noted discrepancies in the Record between her testimony and statements she, C.N.B.'s father, and C.N.B.'s grandmother made to

---

[1]The Court will focus on the testimony related to the issues raised in this proceeding.

doctors, as well as the differences between her testimony and the opinions of medical professionals.

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

As mentioned previously, a child's claim for benefits is evaluated by considering the six domains identified above.  The child is entitled to benefits if he or she is extremely limited in one domain or markedly limited in two domains.  A marked limitation exists for a child under three years of age when the child is functioning at a level that is more than half but less than two-thirds of the child's chronological age.  20 C.F.R. § 416.926a(e)(2)(ii).  With respect to the domain of health and well-being, a marked limitation exists if the child has "frequent episodes of illnesses . . . or frequent exacerbations of the impairment(s)" that occur over specified intervals.  Id. § 416.926a(e)(2)(iv).

While Plaintiff has advanced two arguments, they are really variants of a single contention: that the ALJ's decision that C.N.B. only has a less than marked limitation in his ability to care for himself is not supported by substantial evidence in the Record as a whole. The Record contains evidence demonstrating C.N.B. could feed himself, drink from a sippy cup, and remove his socks.  He had not demonstrated the ability to dress

4

himself, but this was because he was not really afforded the opportunity to try. Medical professionals repeatedly indicated C.N.B. was improving. While those expert opinions indicated C.N.B. might have difficulty caring for himself, and while those skills have been "delayed," none of the opinions suggested C.N.B.'s limitations rose to the level of a marked limitation. Significantly, Dr. Wheeler – C.N.B.'s pediatrician – opined that C.N.B. is less than markedly limited in this domain. All of this supported the ALJ's decision: that while C.N.B. is limited in this domain, that limitation is "less than marked."

In reaching this decision the ALJ discounted Plaintiff's testimony because it contradicted other statements made by Plaintiff and was inconsistent with other evidence in the Record. These are appropriate factors for the factfinder to consider. The weighing of conflicting evidence is the ALJ's province, and the Court is not permitted to substitute its view of conflicting evidence for the ALJ's findings.

### III.  CONCLUSION

For these reasons, the ALJ's decision denying benefits is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: March 26, 2013        UNITED STATES DISTRICT COURT